MIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MILLER 3 & 37, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Case No. C2:11-CV-0621 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| **REVCO DISCOUNT DRUG** | : | |
| **CENTERS, INC.,** | : | Magistrate Judge Preston Deavers |
| | : | |
| **Defendant.** | : | |

## ORDER

This matter is before the Court on the Plaintiff's Motions for a Preliminary Injunction (Docs. 7 & 11). For the reasons that follow, the motions are **DENIED.**

### I. BACKGROUND

#### A. Factual History

The Plaintiff Miller 3 & 37, LLC (hereinafter "Miller") is the owner of the property at 111 West Cherry Street. The property was transferred to Miller from Paul and Kay Miller on July 16, 2001. Miller's predecessors in interest entered into a Ground Lease for the property with Defendant REVCO Discount Center on May 19, 1999.[1] REVCO subsequently constructed a CVS Pharmacy Store on the property; CVS is now the tenant under that lease. Section 5 of the Ground Lease governs CVS's permissible uses of the property:

> The Premises may be used for a retail drug store and related uses, and/or for any
> other lawful purposes provided that Tenant shall not be permitted to operate (a) any

---

[1] REVCO ceased to exist following a merger with Ohio CVS Stores, LLC in January of this year. The Plaintiff filed an Amended Complaint on July 19, 2011, to reflect that the proper defendant is Ohio CVS. The Court will refer to the Defendant as CVS in this order.

use which violates any then existing exclusive granted by Landlord with respect to the Remainder . . .

Section 1 of the Ground Lease defines the Remainder. It includes a six-acre site minus the CVS lot. The three acres that constitute the Remainder are currently the site for the Fairland Center Building, a shopping center with the address of 101 West Cherry Street.

In July 2005, Miller entered into a lease, referred to as the "Commercial Lease," with Wedgewood Urgent Care, LLC, for Suite D in the Fairland Center Building. Wedgewood operates Wedgewood Urgent Care out of Suite D of the Fairland Center Building. Wedgewood Urgent Care advertises that it is staffed with physicians and professional personnel to take care of unexpected health concerns. It takes care of those medical conditions that cannot wait for an appointment but do not need the expense and long wait of an Emergency Department visit. These include small/minor broken bones, strains, sprains, earaches, minor cuts that may need stitches, burns, sore throats, and cold and flu symptoms. It also provides physicals, blood pressure checks, and other elective services. Pursuant to the Commercial Lease, Wedgewood has an exclusivity grant that protects it from direct competition: "Landlord agrees that no other space in the Fairland Center Building will be leased to any one who will compete directly with Wedgewood Urgent Care, LLC."

CVS recently began construction on a MinuteClinic that it would operate within the CVS store that is the subject of the Ground Lease. CVS advertises the MinuteClinic as "the medical clinic in CVS pharmacy." The nurse practitioners and doctors at the clinic will diagnose and treat common illnesses, minor injuries, and skin conditions. They will also offer health screenings, vaccinations, and physicals.

### C. Procedural History

Miller filed suit in the Delaware County Court of Common Pleas on July 13, 2011, seeking a temporary restraining order and permanent injunction prohibiting CVS from continuing with construction of the MinuteClinic. CVS filed a notice of removal to this Court pursuant to 28 U.S.C. § 1446(d) on July 14, 2011.

Miller filed its Motion for Temporary Restraining Order and Preliminary Injunction on July 19, 2011 (Doc. 7). The Court held a conference under Local Rule 65.1 on July 15, 2011, at which it granted Miller's request for a temporary restraining order, effective until the Court could render a decision on the preliminary injunction.

On August 9, 2011, the Court held a hearing on the motion for a preliminary injunction at which both parties were present and had the opportunity to present evidence. The matter has been fully briefed and argued, and is now ripe for a decision.

### II. ANALYSIS

Rule 65 of the Federal Rules of Civil Procedure authorizes the Court to issue preliminary injunctions. The Court must consider and balance the following four factors in determining whether a preliminary injunction is required: "(1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Id.* A movant must show at

least "serious questions going to the merits" in order to be granted a preliminary injunction. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (quoted with approval in *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009)).

### A. Likelihood of Success on the Merits

Miller contends that CVS is in breach of Section 5 of the Ground Lease because the operation of the MinuteClinic will violate the terms of the exclusivity grant given to Wedgewood in the Commercial Lease. CVS retorts that it has not breached the Ground Lease because the exclusivity grant does not apply to CVS but only to the Fairland Center Building.

As described above, Section 5 prohibits CVS from engaging in "any use which violates any then existing exclusive granted by Landlord with respect to the Remainder." The evidence submitted at the hearing indicated that the building occupied by Wedgewood is part of the Remainder. The Court must therefore examine whether CVS has "violated" the terms of the exclusive in the Commercial Lease. The plain meaning of the Commercial Lease demonstrates that it will not. The Commercial Lease shields Wedgewood from competition from any other tenants "in the Fairland Center Building." Miller concedes that—and the record plainly shows that—the Fairland Center Building and the CVS building are wholly separate and distinct.

Miller asks the Court to read Section 5 expansively such that the reference to the Remainder in effect transforms the exclusive from one concerning the Fairland Center Building to one concerning the CVS building and the Fairland Center Building. This is an implausible reading of clear and unambiguous contractual terms. *Cf. Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 817–18 (6th Cir. 1999) ("[I]f the meaning of the contract is apparent, the terms of the agreement are to be applied, not interpreted. . . An ambiguity exists

only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations.") (internal quotations omitted) (applying Ohio law).[2] The Ground Lease does not state that CVS should consider itself bound by any exclusive in the Remainder regardless of the terms or scope of that exclusive. It merely obligates CVS not to run afoul of any exclusive in the Remainder, *i.e.* not to violate the terms of any such exclusive. The terms of the exclusive in the case *sub judice* explicitly limit its scope to the Fairland Center Building. Wedgewood and Miller could have contracted for an exclusive that protected Wedgewood from competition from the Fairland Center Building and CVS, but they did not. The Court will give effect to the terms of the agreements as written.

Because CVS's operation of the MinuteClinic is not within the scope of the Wedgewood exclusive, CVS is not in breach of Section 5 of the Ground Lease. Miller has therefore failed to show that it possesses a likelihood of success on the merits. This factor weighs heavily against the issuance of a preliminary injunction.

### B. Irreparable Harm

A harm is only irreparable where there is no adequate remedy at law. *Sampson v. Murray*, 415 U.S. 61, 90 ( 1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that

---

[2] The Court notes that extrinsic evidence is not permitted as to an unambigious contract. *Gencorp*, 178 F.3d at 818. Even if the Court were to find that the contract in this case was ambiguous, the evidence given by Paul Miller, one of two members in Miller 3 & 37, at the hearing indicated that he has always understood the Wedgewood exclusive to govern businesses in the Fairland Center building only. He did not believe, at the time of drafting or since, that either the Ground Lease or the Commercial Lease, read separately or together, gave Wedgewood an enforceable interest in the business conducted in the CVS building. Thus both the contractual language and the extrinsic evidence are in accord: CVS is not in violation of the exclusive granted to Wedgewood in the Remainder.

adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). Miller contends that monetary relief is inadequate because without an injunction, CVS will continue construction and Miller will be sued by its other tenants. The Court notes two problems with Miller's argument. First, it is not clear to this Court that Wedgewood has a case for breach of the Commercial Lease against Miller given the clear language limiting the scope of the exclusivity grant to the Fairfield Center Building. Second, even if Wedgewood were to sue Miller, Wedgewood's remedy would likely be monetary. Miller could then recover those funds from CVS if CVS were held to be in breach of the Ground Lease. Nothing in the record indicates that Miller will suffer a harm not otherwise compensable at law. This factor, too, weighs heavily against the issuance of a preliminary injunction.

### C. Balancing the Equities

This factor is essentially a wash. CVS will clearly suffer financially from the imposition of a preliminary injunction. CVS claims that it has already invested $123,000 in the MinuteClinic and has already hired clinic staff who will be unemployed if the clinic does not open. Wedgewood, on the other hand, will suffer economic harm if the MinuteClinic opens and competes directly with Wedgewood's services. Miller, too, may suffer economic harm in the absence of a preliminary injunction. The injuries that would occur with or without the injunction neutralize each other. The Court notes, though, that all of the potential injuries are economic in nature and therefore compensable at law. This factor, then, weighs slightly against the issuance of an injunction.

### E. Public Interest

The Court believes that the public interest will be largely unaffected by the outcome of Miller's request for a preliminary injunction. The public, however, has an interest in the orderly operation of the free market, and, therefore, in the enforcement of contractual obligations. Because the Court has concluded that CVS is not in breach of the Ground Lease, denying the preliminary injunction would best honor the unambiguous terms of that lease and will therefore best serve the public's interest. This factor, therefore, weighs against the issuance of a preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, as well as those stated on the record in open court, the Court **DENIES** Miller's Motions for a Preliminary Injunction (Docs. 7 & 11).

**IT IS SO ORDERED.**

s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: August 17, 2011**